UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

AFSHIN MONSEFI, Individually and on
Behalf of All Those Similarly Situated,

                Plaintiff,

      vs.

ORION ENERGY SYSTEMS, INC., et al.,

                Defendants.

: Civil Action No. 1:08-cv-01328-RJS
:
: **CLASS ACTION**
:

———————————————————— 

JASON ALLEN, Individually and On Behalf
of All Others Similarly Situated,

                Plaintiff,

      vs.

ORION ENERGY SYSTEMS, INC., et al.,

                Defendants.

: Civil Action No. 1:08-cv-01992-RJS
:
: **CLASS ACTION**
:

———————————————————— 

WILLIAM JENNINGS GOLSTON, On Behalf
of Himself and All Others Similarly Situated,

                Plaintiff,

      vs.

ORION ENERGY SYSTEMS, INC., et al.,

                Defendants.

: Civil Action No. 1:08-cv-02984-UA
:
: **CLASS ACTION**
:

———————————————————— x

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF IRON WORKERS LOCAL NO. 25 PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

Institutional Investor Iron Workers Local No. 25 Pension Fund ("Iron Workers") respectfully submits this memorandum of law in further support of its motion for consolidation, for appointment as Lead Plaintiff and for approval of its selection of Lead Counsel and in opposition to the competing motions.

## I.     PRELIMINARY STATEMENT

On April 11, 2008, four motions were filed in the above-captioned actions, each one seeking consolidation of the related actions, appointment of the respective movant as Lead Plaintiff and approval of each movant's selection of Lead Counsel.  The movants are as follows: (1) Iron Workers; (2) Michael and Tonia Elder, Boris Nayfish and John Aliano (collectively, the "Elder Group"); (3) Walter Milbrath[1]; and (4) Daniel Sitzberger and Boris Nayflish (collectively, the "Sitzberger Group")[2].

All movants agree that the Private Securities Litigation Reform Act of 1995 ("PSLRA") directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of [the] class members" in this litigation.  15 U.S.C. §78u-4(a)(3)(B)(i).  There is also no dispute that, pursuant to the PSLRA, the presumptively most adequate plaintiff is the one that: (1) "has the largest financial interest in the relief sought by the class"; and (2) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)-(cc).

---

[1]     On April 28, 2008, Walter Milbrath withdrew his motion citing the greater financial interest of other movants.

[2]     Counsel for the Sitzberger Group has advised counsel for Iron Workers that it recognizes that Iron Workers represents the largest financial interest in this litigation and does not intend to oppose its motion.

With a financial interest of $128,151.77, Iron Workers clearly has the largest financial interest in this litigation. Moreover, as detailed herein, Iron Workers satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. As such, it is the presumptive Lead Plaintiff and its motion should be granted.

In addition to not representing the largest financial interest, the motion of the Elder Group should be denied because its members have obviously not spoken with one another or discussed this litigation with their proposed counsel. This is evidenced by the fact that one of its members, Boris Nayfish, filed two competing motions for appointment as Lead Plaintiff, one with the Elder Group and one with the Sitzberger Group. This fact alone shows that the Elder Group is a lawyer-created group and, therefore, is antithetical to the policies underlying the PSLRA and its lead plaintiff provisions. *See Tsirekidze v. Syntax-Brillian Corp., et al.*, No. CV-07-2204-PHX-FJM, slip op. at *8 (D. Ariz. Apr. 4, 2008) (attached hereto as Exhibit A) (finding that a proposed lead plaintiff named as a member of two competing movant groups evidences that both groups have no "meaningful connection").

For these reasons, and as set forth below in further detail, it is respectfully submitted that the Court should grant the motion of Iron Workers in full, appoint it as Lead Plaintiff, approve of its selection of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as Lead Counsel, and deny the competing motions.

## II.     ARGUMENT

### A.     The Procedures Required by the PSLRA for the Appointment of Lead Plaintiff

Section 21D of the PSLRA provides that in securities class actions, courts "shall appoint as lead plaintiff(s) the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. §78u-

4(a)(3)(B)(i).  In determining which class member is "the most adequate plaintiff," the PSLRA

provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private
> action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the *largest financial interest* in the relief
> sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil
> Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  [Emphasis added.]

The PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the

person or entity with the largest financial interest in the relief sought.  In order to rebut that

presumption, the competing movants must offer proof that Iron Workers is not adequate or typical to

represent the Class. *See In re Cardinal Health Inc. Sec. Litig.,* 226 F.R.D. 298, 302 (S.D. Ohio

2005) ("To determine which candidate should be Lead Plaintiff, the Court engages in a two-step

inquiry, calculating which candidate has the largest financial interest, and then determining whether

that candidate meets the typicality and adequacy requirements of Rule 23(a).").  As set forth herein,

Iron Workers is the presumptive Lead Plaintiff and none of the other movants can offer any type of

proof to rebut that presumption.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (stating that "proof" is

required to rebut the presumption afforded to the presumptive lead plaintiff).

## 1.    Iron Workers Has the Largest Financial Interest in This Litigation

While the PSLRA does not specify how to decide which plaintiff has the "largest financial

interest" in the relief sought, it is often determined most simply by which potential lead plaintiff has

suffered the greatest total losses. *See In re Espeed, Inc. Sec. Litig.,* 232 F.R.D. 95, 100 (S.D.N.Y. 2005). The size of a movant's losses are either calculated using the "first-in/first-out" ("FIFO")[3] method or the "last-in/first-out" ("LIFO")[4] method. Using either methodology that the Court chooses to employ, Iron Workers has the largest financial interest in this litigation.

In addition to the size of a movant's losses, courts have also looked at other factors in determining a movant's financial interest, the so-called four factor test. *See Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 11, 1997). The four factors are: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *See In re Fuwei Films Sec. Litig.,* 247 F.R.D. 432, 436-437 (S.D.N.Y. 2008). The following chart analyzes the competing movants under the four factor test:

| Movant | # of Shares Purchased | Number of Net Shares Purchased | Net Funds Expended | Loss |
|---|---|---|---|---|
| **Iron Workers** | **26,134** | **26,134** | **$363,357.77** | **$128,151.77** |
| The Elder Group | 2,700 | 2,700 | $50,063.31 | $25,863.31 |
| Walter Milbrath | 3,000 | 3,000 | $48,000.00 | $21,000.00 |
| The Sitzberger Group | 1,700 | 1,700 | $34,588.00 | $19,288.00 |

As shown above, under the four factor test, Iron Workers has a greater measure of financial interest under all four factors. This analysis further supports the conclusion that Iron Workers has

---

[3]     Under the "first-in/first-out" ("FIFO") method, shares sold during the Class Period are matched with the first shares held or purchased at the beginning of the Class Period, whichever comes first.

[4]     Under the "last-in/first-out" ("LIFO") method, a plaintiff's sales of the defendant's stock during the Class Period are matched against the last shares purchased, resulting in an off-set of Class Period gains from a plaintiff's ultimate losses.

the greatest financial interest among the competing movants.  Moreover, Iron Workers purchased

11,974 shares directly in the Company's initial public offering – no other movant can lay such a

claim.

### 2.     Iron Workers Satisfies the Requirements of Rule 23

Under the PSLRA, once a court finds that a movant has the largest financial interest in the

litigation and is otherwise adequate and typical, as is the case with Iron Workers here, the court must

appoint that plaintiff as lead plaintiff unless the court finds that the movant has not made a *prima*

*facie* showing of adequacy and typicality.  *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB),

2004 U.S. Dist. LEXIS 13898, at *17 (S.D.N.Y. July 20, 2004) ("At this stage in the litigation, one

need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have

been satisfied."); *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).  In this regard, the court in

*Cavanaugh* stated:

> [A] straightforward application of the statutory scheme, as outlined above, provides
> no occasion for comparing plaintiffs with each other on any basis other than their
> financial stake in the case.  Once that comparison is made and the court identifies the
> plaintiff with the largest stake in the litigation, further inquiry must focus on that
> plaintiff alone and [should] be limited to determining whether he satisfies the other
> statutory requirements.

306 F.3d at 732.

Iron Workers satisfies the typicality and adequacy requirements of Rule 23.  The claims of

Iron Workers are typical of the claims of the rest of the Class because, just like all other Class

members, it purchased Orion Energy Systems, Inc. ("Orion") common stock during the Class Period

in reliance upon the allegedly materially false and misleading statements issued by defendants, and

suffered damages thereby.  Thus, Iron Workers's claims are typical of those of other Class members

since its claims and the claims of other Class members arise out of the same course of events.  *See*

*Fuwei Films*, 247 F.R.D. at 436 ("Typicality is satisfied if each class member's claim arises from the

same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (internal citation omitted).

Iron Workers is also an adequate representative of the Class. As evidenced by the injuries suffered by Iron Workers, who purchased Orion common stock at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of Iron Workers are clearly aligned with the interests of the members of the Class, and there is no evidence of any antagonism between Iron Workers's interests and those of the other members of the Class.

Additionally, Iron Workers is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari,* 2004 U.S. Dist. LEXIS 13898, at *10 (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs). Moreover, as an institutional investor, Iron Workers is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the Class.

In fact, Congress, in passing the PSLRA, expressed a strong preference for plaintiffs, such as Iron Workers, to be appointed lead plaintiff. The legislative history of the PSLRA demonstrates this clear Congressional intent:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs. . . . The Conference Committee believes that . . . with pension funds accounting for $4.5 trillion or nearly half of the institutional assets [of the equity market] . . . institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

House Conf. Rep. No. 104-369, 104th Cong. 1st Sess. at 34 (1995); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MD 1529 (LMM), 2005 U.S. Dist. LEXIS 19052, at *4-*6 (S.D.N.Y. Sept. 1, 2005). In keeping with that Congressional intent, courts in this Circuit routinely appoint pension and retirement funds as lead plaintiffs pursuant to the PSLRA. *See In re Symbol*

- 6 -

*Techs. Sec. Litig.,* No. 05 CV 3923 (DRH)(JO), 2006 U.S. Dist. LEXIS 24776 (E.D.N.Y. Apr. 26, 2006) (appointing an institution as lead plaintiff); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184 (S.D.N.Y. 2006) (appointing an institution as lead plaintiff); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330 (S.D.N.Y. 2005) (same).

Further, Iron Workers has taken significant steps which demonstrate that it will protect the interests of the Class: it has retained highly qualified and experienced counsel to prosecute these claims. In that regard, Iron Workers has selected the law firm of Coughlin Stoia as Lead Counsel. Coughlin Stoia has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624, 2005 U.S. Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005), in which Coughlin Stoia has obtained recoveries to date which represent the largest recovery ever obtained in a shareholder class action. Thus, Iron Workers *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

Accordingly, Iron Workers should be appointed as Lead Plaintiff because its losses are significantly larger than any other Lead Plaintiff movant, and it is otherwise adequate and typical for the purposes of this motion.

**B.    The Competing Motions Should Be Denied**

In addition to not representing the largest financial interest in this action, the motion of the Elder Group should be denied because it shares a member, Boris Nayfish, with the Sitzberger Group. *See Tsirekidze*, No. CV-07-2204-PHX-FJM, slip op. at *9. The fact that Mr. Nayfish filed two competing motions evidences that he did not speak with counsel for both of the movant groups and the co-movants of each group did not speak with one another to discuss this motion and their plan to litigate this case together as co-lead plaintiffs. Thus, it is obvious that the Elder Group is not the

type of lead plaintiff that Congress had intended would act to vigorously represent the interests of the Class.

## III.    CONCLUSION

For all the reasons stated herein, Iron Workers's motion for consolidation, for appointment as Lead Plaintiff and for approval of its selection of Lead Counsel should be granted and the competing motions should be denied.

DATED:  April 28, 2008                          COUGHLIN STOIA GELLER
                                                  RUDMAN & ROBBINS LLP
                                                SAMUEL H. RUDMAN
                                                DAVID A. ROSENFELD
                                                MARIO ALBA JR.


                                                _____
                                                        /s/ *Mario Alba Jr.*
                                                     MARIO ALBA JR.

                                                58 South Service Road, Suite 200
                                                Melville, NY  11747
                                                Telephone:  631/367-7100
                                                631/367-1173 (fax)

                                                *[Proposed] Lead Counsel for Plaintiffs*

I:\Orion Energy\LP Motion\LP Opp.doc

## CERTIFICATE OF SERVICE

I, Mario Alba Jr., hereby certify that, on April 28, 2008, I caused a true and correct copy of the attached:

> Memorandum of Law in Further Support of the Motion of Iron Workers Local No. 25 Pension Fund for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel and in Opposition to the Competing Motions

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to any additional counsel.

_____*/s/ Mario Alba Jr.*_____
Mario Alba Jr.

ORION ENERGY SYSTEMS

Service List - 4/14/2008    (08-0065)

Page 1 of  2

**Counsel For Defendant(s)**

Robert A. Scher
Foley & Lardner LLP
90 Park Avenue
New York, NY  10016
   212/682-7474
   212/687-2329 (Fax)

Jerome S. Hirsch
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY  10036
   212/735-3000
   212/735-2000 (Fax)

**Counsel For Plaintiff(s)**

Evan J. Smith
Brodsky & Smith, LLC
240 Mineola Blvd., 1st Floor
Mineola, NY  11501
   516/741-4977
   516/741-0626 (Fax)

Samuel H. Rudman
David A. Rosenfeld
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
   631/367-7100
   631/367-1173 (Fax)

Michael A. Swick
Kim E. Miller
Kahn Gauthier Swick, LLC
12 East 41st Street, 12th Floor
New York, NY  10017
   212/696-3730
   504/455-1498 (Fax)

Lewis S. Kahn
Kahn Gauthier Swick, LLC
650 Poydras Street, Suite 2150
New Orleans, LA  70130
   504/455-1400
   504/455-1498 (Fax)

Jeffrey A. Klafter
Klafter & Olsen LLP
1311 Mamaroneck Avenue, Suite 220
White Plains, NY  10605
   914/997-5656
   914/997-2444 (Fax)

Kurt B. Olsen
Klafter & Olsen LLP
1250 Connecticut Avenue, N.W.
Suite 200
Washington, DC  20036
   202/261-3553
   202/261-3533 (Fax)

ORION ENERGY SYSTEMS

Service List - 4/14/2008    (08-0065)

Page 2 of  2

Laurence D. Paskowitz
Paskowitz & Associates
60 East 42nd Street, 46th Floor
New York, NY  10165
   212/685-0969
   212/685-2306 (Fax)

Roy L. Jacobs
Roy Jacobs & Associates
60 East 42nd Street, 46th Floor
New York, NY  10165
   212/867-1156
   212/504-8343 (Fax)

Richard A. Maniskas
D. Seamus Kaskela
David M. Promisloff
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA  19087
   610/667-7706
   610/667-7056 (Fax)

Robert M. Roseman
Andrew D. Abramowitz
David  Felderman
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
   215/496-0300
   215/496-6611 (Fax)

1 | **WO**

2

3

4

5

6 | IN THE UNITED STATES DISTRICT COURT

7 | FOR THE DISTRICT OF ARIZONA

8

9 | Teimuraz Tsirekidze, On Behalf of) | No. CV-07-2204-PHX-FJM
Himself and All Others Similarly Situated,)

10 | ) | **ORDER**
Plaintiff, | )

11 | )
vs. | )

12 | )
)

13 | Syntax–Brillian Corp., Vincent F. Sollitto,)
Jr., and Wayne Pratt, | )

14 | )
Defendants. | )

15 | )
)

16 | —————————————————————) | **CONSOLIDATING**

17 | The Nagel Family Trust, On Behalf of) | No. CV-07-2454-PHX-ROS
Itself and All Others Similarly Situated, | )

18 | )
Plaintiff, | )

19 | )
vs. | )

20 | )
Syntax–Brillian Corp. A.K.A. Olevia)

21 | International Group, Inc., Vincent F.)
Sollitto, Jr., James Ching Hua Li, Man Kit)

22 | (Thomas) Chow, and Wayne Pratt, | )

23 | )
Defendants. | )

24 | —————————————————————) | [caption continued on following page]

25

26

27

28

1  Angelko Bogdanov, On Behalf of Himself)    No. CV-07-2524-PHX-ROS
   and All Others Similarly Situated,       )
2                                           )
           Plaintiff,                       )
3                                           )
   vs.                                      )
4                                           )
                                            )
5  Syntax–Brillian Corp., Vincent F. Sollitto,)
   Jr., James Li, and Wayne Pratt,          )
6                                           )
           Defendants.                      )
7                                           )
   _____)
8

9  Paula Langley, Individually and On Behalf)    No. CV-07-2525-PHX-SRB
   of All Others Similarly Situated,        )
10                                          )
           Plaintiff,                       )
11                                          )
   vs.                                      )
12                                          )
                                            )
13 Syntax–Brillian Corp., Vincent F. Sollitto,)
   Jr., and Wayne Pratt,                    )
14                                          )
           Defendants.                      )
15                                          )
   _____)
16

17

18         Four securities class actions have been filed in this district against defendant

19  Syntax–Brillian Corp. and several of its officers.  Five members of the proposed class now

20  move for consolidation of the actions, for appointment as lead plaintiff, and for approval of

21  lead counsel.  The court has before it the following documents:  Syntax Investor Group's

22  motion, (doc. 6), supporting memorandum (doc. 7), memorandum in response to competing

23  motions (doc. 27), and reply in further support of its own (doc. 36); the McCullough

24  Family's motion (doc. 23), supporting memorandum (doc. 8), supporting declaration of

25  Gustavo Bruckner (doc. 9), response to competing motions (doc. 28), and reply in further

26  support of its own (doc. 37); Angelko Bogdanov, John Gardini, and Bloomfield, Inc.'s

27  motion (doc. 11), supporting memorandum (doc. 12), and supporting declaration of Frank

28

Verdame (doc. 14);[1] the Farrukh Group's motion and supporting memorandum (doc. 15), response to competing motions (doc. 30), and reply in support of its own (doc. 38); and the City of St. Clair Shores Police and Fire Retirement System's motion (doc. 17), supporting memorandum (doc. 18), supporting declaration of Michael Salcido (doc. 19), response to competing motions (doc. 32), and reply in further support of its own (doc. 40).

# I

All four complaints name as defendants Syntax–Brillian Corp. ("Syntax"), a manufacturer and distributor of high definition televisions based in Tempe, Arizona; Vincent Sollitto, Jr., who is chairman of the company's board of directors and served as chief executive officer until September 30, 2007; and Wayne Pratt, who was the company's chief financial officer and vice president until September 30, 2007. Two of the complaints name additional defendants. One adds James Ching Hua Li, a company director who became chief executive officer in October 2007;[2] the other adds James Ching Hua Li as well as Man Kit Chow, the company's executive vice president and chief procurement officer.[3]

All four complaints seek recovery under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t (2006). Plaintiffs allege that defendants overstated profits and projections, concealed shortfalls, and otherwise misled investors, which caused an artificial inflation of Syntax stock price. The complaints propose a class of investors who suffered losses when the stock dropped precipitously on September 13, 2007, following a company announcement that Syntax revenues were much lower than anticipated. Three complaints propose essentially the same "class period"—that the class be open to those

---

[1] The court also has before it the Bogdanov Group's supporting memorandum that appears only on the docket of No. CV-07-2524-PHX-ROS (doc. 41).

[2] No. CV-07-2524-PHX-ROS

[3] No. CV-07-2454-PHX-ROS

who acquired Syntax stock roughly between May 1, 2007, and September 13, 2007. One complaint proposes a longer class period, February 9, 2007, to November 14, 2007.[4]

## II

Under Rule 42, Fed. R. Civ. P., we may consolidate "actions involving a common question of law or fact." The complaints in these four actions are nearly identical, and the minor differences in proposed class periods and named individual defendants are not obstacles to consolidation. Olsen v. N.Y. Comm. Bancorp, Inc., 233 F.R.D. 101, 104–105 (E.D.N.Y. 2005). Therefore, the motions to consolidate are granted.

The method for appointing a lead plaintiff in a securities class action is governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 (2006). The party who files the action must publicize its pendency, the proposed class period, and the nature of the claims. § 78u-4(a)(3)(A)(i). The publication must also inform potential class members that they have 60 days to come forward and move to be appointed lead plaintiff. § 78u-4(a)(3)(A)(ii). If, as here, multiple class actions are brought asserting substantially the same claims, publication is required only of the first to file, in this case Syntax Investor Group. § 78u-4(a)(3)(A)(ii). Once the 60-day window closes, the court determines the lead plaintiff ("most adequate plaintiff").

Under the PSLRA, the court "shall adopt a presumption that the most adequate plaintiff is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" *and* "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." § 78u-4(a)(3)(B)(iii)(I). Only two requirements of Rule 23, commonly referred to as "typicality" and "adequacy," are relevant to the selection of lead plaintiff. In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002). First, the claims or defenses of the lead plaintiff must be "typical of the claims or defenses of the class." Second, the lead plaintiff must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)–(4). Once the presumption is established, other potential lead

---

[4] No. CV-07-2524-PHX-ROS

plaintiffs may rebut it with proof that the "presumptively most adequate plaintiff" *does not* satisfy the two requirements of Rule 23. § 78u-4(a)(3)(B)(iii)(II). This perplexing statutory scheme suggests that the initial determination on typicality and adequacy "should be a product of the court's independent judgment, and that arguments by members of the purported plaintiff class . . . should be considered *only* in the context of assessing whether the presumption has been rebutted." In re Cendant Corp. Litig., 264 F.3d 201, 263–64 (3d. Cir. 2001).

Therefore, we must first rank potential lead plaintiffs in order of financial interest. Beginning with the potential lead plaintiff who has the greatest financial interest, we make a determination on typicality and adequacy, relying only on that party's "complaint and sworn certification." In re Cavanaugh, 306 F.3d at 730. If the party has made a prima facie showing of typicality and adequacy, that party becomes the presumptive lead plaintiff, and we then consider rebuttal evidence from competing movants for lead plaintiff. If the presumption is not rebutted, lead plaintiff is determined. If, however, the presumption is either not established or is successfully rebutted, we go back and consider the typicality and adequacy of the potential lead plaintiff who has the *next greatest* financial interest, proceeding so on until a lead plaintiff is found. Id. at 731.

Before applying the PSLRA approach, we note that its enactment was an effort by Congress to counteract the tendency of securities class actions to be "lawyer driven." Before PSLRA, lead plaintiff status generally went to the first to file. This resulted in a "race to the courthouse," and eager counsel rounded up "lead" plaintiffs who effectively exercised no control over the litigation. PSLRA's notice requirement slows the race and gives seriously interested class members an opportunity to step forward. The presumption in favor of the movant with the greatest financial interest (who satisfies Rule 23) assumes that a class member with much at stake, often a large institutional investor, will have the most incentive, and be in the best position, to actually exert influence over lead counsel. See id. at 729.

Though Congress has attempted to shift the balance with PSLRA, a review of the documents filed so far in this action makes clear that counsel have nonetheless succeeded in keeping themselves at the forefront of securities class actions. We have before us six inches of briefing that has precious little to do with the merits of the claim and less to do with the fitness of any class member to steer this litigation. What we have in abundance is unwelcome sniping among counsel.

### III

The potential lead plaintiffs must be ranked in terms of their "financial interest" in the litigation.[5] Courts have proposed several metrics by which to measure financial interest. Fortunately, there is little dispute among the parties on this point. The parties essentially agree to a ranking in terms of estimated financial loss as follows:  1) the Farrukh Group (about $ 300,000), 2) the McCullough Family (about $ 165,000), 3) the Syntax Investor's Group (about $155,000), 4)  St. Clair Shores Police and Fire Retirement System ($28,800), and 5) the Bogdanov Group ($17,590).

To begin, we decide whether the Farrukh Group, the proposed lead plaintiff with the largest financial interest, satisfies the requirements of Rule 23 based on its motions and declarations. We note that a "district court has latitude as to what information it will consider in determining typicality and adequacy." In re Cavanaugh, 306 F.3d at 732. On the question of adequacy, we focus on the Farrukh Group's status as a "group." Although the PSLRA allows groups to serve as lead plaintiffs, "courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." In re Gemstar-TV Guide Int'l, Inc. Sec. Litig., 209 F.R.D. 447, 451 (C.D. Cal. 2002). For the most part, to "allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing

---

    [5] Two of the parties who filed complaints, Paula Langley (CV-07-2525-PHX-SRB) and the Nagel Family Trust (CV-07-2454-PHX-ROS), have not moved to be appointed lead plaintiff, so we have no way to determine their financial interest.

a lead plaintiff." In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157 (S.D.N.Y. 1997). Such a group is unlikely to "fairly and adequately represent the class" because it is unlikely to engage in the litigation in a meaningful way at all. Fed. R. Civ. P. 23(a)(4). What is more, when unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation. See In re Donnkenny Inc. Sec. Litig., 171 F.R.D. at 158  ("[With the PSLRA,] Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.").

From their papers, it appears that the Farrukh "Group" consists of three completely unrelated individuals from different parts of the country. There is no suggestion how they plan to work together as a cohesive unit. As far as we can tell, each individual has so far participated only to the extent of signing his name onto a boilerplate "certification in support of application of lead plaintiff." See Motion of the Farrukh Group (doc. 15), Ex. A. At one point, the group suggests that we pluck one of its top-two constituents to serve as lead plaintiff "if this Court does not appoint a group as the lead plaintiff." Reply of the Farrukh Group (doc. 38) at 6. We decline to do so. The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such. The willingness to abandon the group only suggests how loosely it was put together.

Given no evidence of cohesiveness, we are not convinced that the Farrukh Group will adequately represent this class. Cf. In re Northwestern Corp. Sec. Litig., 299 F. Supp. 2d 997, 1006 (D.S.D. 2003) (approved group had established a plan for conducting litigation, including mechanisms to call meetings and resolve disagreements). Even if the Farrukh Group had established itself as presumptive lead plaintiff, there is rebuttal evidence. Competing movant Syntax Investor Group has brought to our attention a "press release" issued by the Farrukh Group's counsel the day before the lead-plaintiff window closed, which "urges" Syntax investors to sign up with the firm. Sytnax Investor Group's Reply at 8–9. All members of the Farrukh Group signed certifications in support of lead plaintiff status the next day, January 15, 2008, the day lead plaintiff motions were due.

The Farrukh Group does not contest that their participation was a product of counsel's "press release." They even suggest that their signing certifications on the same day (the day motions were due) is evidence of the group's cohesiveness. <u>Farrukh Group's Response (doc. 30)</u> at 9. We are not persuaded. Without determining the ethical implications of counsel's patent effort to solicit clients, we conclude that the Farrukh Group's formation runs directly contrary to the goals of the PSLRA—to reduce lawyer-driven litigation. The Farrukh Group will not be appointed lead plaintiff.

Next, we turn to the McCullough Family group, which has the second greatest financial interest. Oddly, the group's principal member, Robert McCullough, Jr., was initially named as a member of a competing proposed lead plaintiff, the Syntax Investor Group. <u>Syntax Investor Group's Motion (doc. 6), Ex. B</u>. In his sworn declaration, McCullough states that he sent his lead-plaintiff certification to the wrong firm "in error." <u>Memorandum of the McCullough Family (doc. 28), Ex. A</u>. Such a blatant gaffe does not bode well for the adequacy of his group to lead this litigation.

The McCullough Family also has difficulty under the typicality prong of Rule 23. Typicality is not satisfied when a proposed lead plaintiff is subject to a unique defense, which could become the focus of the litigation. <u>Zenith Labs., Inc. v. Carter-Wallace, Inc.</u>, 530 F.2d 508, 512 (3d. Cir. 1976). A review of Robert McCullough, Jr.'s trading history reveals that he was unusually active, making as many as 80 separate transactions of Syntax-Brillian stock in a single day. <u>Declaration of Gustavo Bruckner (doc. 9), Ex. 3</u>. Such a high-volume day trader might be subject to the unique defense that frantic trading belies any true reliance on company reports or even on the integrity of the stock price itself. <u>See</u> <u>In re Safeguard Scientifics</u>, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (noting that day traders often focus on technical price movements rather than price). While a day trader is not ipso facto disqualified from the lead plaintiff role, McCullough's unique trading pattern combined with questions about adequacy establish that his group should not represent the class.

Next in terms of financial interest is the Syntax Investor Group. This group fails the adequacy prong of Rule 23 for much the same reason as the Farrukh Group. There is simply no evidence that this "group" has a meaningful connection. The group's lack of cohesion is clearly evidenced by the fact, mentioned above, that its initial motion included Robert McCullough, Jr. as a member, even though he had retained separate counsel and was soon filing competing motions of his own.

We next turn to the City of St. Clair Shores Police and Fire Retirement System ("St. Clair"). This is the first group that satisfies both prongs of Rule 23. The opposing movants make no argument against St. Clair other than pointing out its relatively low financial stake in the litigation. But we have thoroughly applied the In re Cavanaugh test, and St. Clair is the first to meet its standards. We are especially encouraged that the client is a public retirement fund and thus more likely to control counsel. We have reviewed St. Clair's proposal of Coughlin Stoia Geller Rudman & Robbins, LLP, as its proposed lead counsel, and Buckley King as its proposed liaison counsel. We conclude that these firms are more than capable of conducting this litigation in the best interests of the class.

Finally, the Bogdanov Group will not be appointed lead plaintiff because the group has less of a financial interest than St. Clair. The Bogdanov Group's contention that one of its constituents is uniquely capable of bringing certain claims is without merit.

**IV**

Accordingly, **IT IS HEREBY ORDERED** that St. Clair's motion for consolidation, appointment as lead plaintiff, and approval of counsel (doc. 17) is granted in full. **IT IS FURTHER ORDERED** that all other motions (docs. 6, 11, 15 & 23) are **GRANTED** insofar as they move for consolidation, but are otherwise **DENIED**.

DATED this 4th day of April, 2008.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge