UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                                                    :
In re ORION SECURITIES LITIGATION    :    Civil Action No. 1:08-cv-01328-RJS
                                                    :
————————————————————————    :    CLASS ACTION
                                                    :
This Document Relates To:                    :
                                                    :
     ALL ACTIONS.                                :
                                                    :
———————————————————————— x


## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
## FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Lead Plaintiff Iron Workers Local No. 25 Pension Fund (the "Lead Plaintiff" or "Plaintiff") makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which investigation included analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about Orion Energy Systems, Inc. ("Orion" or the "Company"), interviews of former employees of Orion, press releases and other public statements issued by the Company, and media reports about the Company and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons, other than Defendants, who purchased the common stock of Orion pursuant and/or traceable to the Company's initial public offering on or about December 18, 2007 through February 6, 2008, seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"). This action concerns the initial public offering of Orion common stock which took place on or about December 18, 2007 (the "IPO" or the "Offering").

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o].

3.    This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

4.    Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §1391(b) and (c). Many of the acts and conduct complained of herein occurred in substantial part in this District.

5.      In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the NASDAQ National Market (the "NASDAQ"), a national securities exchange.

## PARTIES

6.      Lead Plaintiff purchased Orion common stock, as set forth in its certification previously filed in this case and incorporated herein by reference, pursuant and/or traceable to the IPO and was damaged thereby.  By order of the Court, dated July 7, 2008, Iron Workers was appointed Lead Plaintiff in this action.

7.      Defendant Orion designs, manufactures, markets, and implements energy management systems primarily energy efficient lighting systems, controls, and related services.

8.      (a)     Defendant Neal R. Verfuerth ("Verfuerth") was, at all relevant times, Chief Executive Officer and President of Orion.  Verfuerth signed the Registration Statement;

(b)     Defendant Daniel J. Waibel ("Waibel") was, at all relevant times, Chief Financial Officer and Treasurer of Orion.  Waibel signed the Registration Statement;

(c)     Defendant Diana Propper de Callejon ("de Callejon") was, at all relevant times, a director of the Company.  de Callejon signed the Registration Statement.  Defendant de Callejon is a managing member of parent companies of Clean Technology Fund, II ("Clean Technology"), a major Orion shareholder, which sold shares in the IPO, as detailed herein;

(d)     Defendants Thomas A. Quadracci, Michael J. Potts, James R. Kackley, Eckhart G. Grohmann and Patrick J. Trotter are each Orion directors and each signed the Registration Statement for the IPO; and

(e)     The Defendants referenced in subsections (a)-(d) above are collectively referred to herein as the "Individual Defendants."

- 2 -

9.    By reason of their management positions and their ability to make public statements in the name of Orion, the Individual Defendants were and are controlling persons, and had the power and influence to cause (and did cause) Orion to engage in the conduct complained of herein.

10.    Defendants Thomas Weisel Partners, LLC ("Thomas Weisel"), Cancord Adams, Inc. ("Cancord Adams") and Pacific Growth Equities, LLC ("Pacific Growth"), served as co-lead underwriters for the IPO (collectively referred to as the "Underwriter Defendants").

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

11.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of itself and all persons other than Defendants who purchased the common stock of Orion pursuant and/or traceable to the IPO on or about December 18, 2007 through February 6, 2008. Excluded from the Class are Defendants herein, members of the immediate family of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

12.    The members of the Class are so numerous that joinder of all members is impracticable. Orion sold more than 8.8 million shares of common stock in the IPO. The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Orion or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

13.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the

- 3 -

federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

14.    Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff's and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

15.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

16.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether the Registration Statement and Prospectus issued by Defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about Orion and its business; and

(c)    the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

17.    Defendant Orion designs, manufactures, markets, and implements energy management systems, primarily energy efficient lighting systems, controls, and related services.

18.    On or about December 12, 2007, Orion filed with the Securities and Exchange Commission ("SEC") a Form S-1/A Registration Statement (the "Registration Statement"), for the IPO.

19.    On or about December 18, 2007, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective and, including the exercise of the over-allotment, 8,846,154 shares of Orion common stock were sold to the public, thereby raising more than $115 million.

20.    Orion insiders sold some of the shares sold in the IPO as follows:  Defendant Verfuerth and his family sold 606,510 shares for gross proceeds of $7.8 million; Defendant de Callejon sold 1,009,0091 personally-owned shares for gross proceeds of approximately $13 million; Defendant Potts sold 80,698 shares for gross proceeds of approximately $1 million; and Defendant Trotter sold 51,479 shares for gross proceeds of approximately $650,000.

21.    The Registration Statement and Prospectus were negligently prepared and, as a result, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

22.    Specifically, the Registration Statement and Prospectus failed to disclose that at the time of the IPO the Company had dramatically shifted its sales focus from its core offerings to new product lines.  The fact that the Company had dramatically shifted its sales focus from its core offerings to new product lines was a material fact because it substantially changed the risk profile for the Company and its business.  Indeed, by directing selling efforts to more speculative technologies

- 5 -

and developmental products, the Company's ability to consistently and predictably generate revenues was far more risky. Accordingly, the omitted facts would have been viewed by investors as substantially altering the total mix of information available to investors and were therefore required to be disclosed in the Registration Statement.

23.     Orion's core product offerings are high intensity fluorescent lighting systems ("HIF"). The Company promotes its fixtures by emphasizing that the systems are extremely energy efficient and that replacing existing lighting fixtures with Orion HIF systems will reduce energy costs, thereby paying for the price of the fixtures over several years. Orion refers to the process of replacing existing lighting fixtures with Orion fixtures as retrofitting.

24.     Given the price of Orion's fixtures and the fact that it takes several years to recoup the cost of the fixtures through reduced energy costs, the sale of the fixtures is an extensive process, which requires that the Company's sales force be well-trained and highly professional. Additionally, these factors increase the sales cycle for the products.

25.     Orion refers to its HIF systems as "Phase I" of its lighting systems. "Phase 2" is a wireless lighting controls called the InteLite. "Phase 3" is the Apollo Light Pipe, which "collects and focuses daylight without consuming electricity."

26.     The Registration Statement positively described the Company's business and noted that the Company's HIF systems were being used in numerous company facilities across the United States. The Registration Statement stated in pertinent part as follows:

> We design, manufacture and implement energy management systems consisting primarily of high-performance, energy efficient lighting systems, controls and related services. Our energy management systems deliver energy savings and efficiency gains to our commercial and industrial customers without compromising their quantity or quality of light. The core of our energy management system is our high intensity fluorescent, or HIF, lighting system that we estimate cuts our customers' lighting-related electricity costs by approximately 50%, while increasing their quantity of light by approximately 50% and improving lighting quality, when

replacing high intensity discharge, or HID, fixtures. We have sold and installed our high-performance HIF lighting systems in over 2,100 facilities across North America, representing over 489 million square feet of commercial and industrial building space, including for 78 Fortune 500 companies, such as Coca-Cola Enterprises Inc., General Electric Co., Kraft Foods Inc., Newell Rubbermaid Inc., OfficeMax, Inc., SYSCO Corp., and Toyota Motor Corp.

27.    The Registration Statement described the Company's "Solution" for reducing energy costs for customers through the installation of the Company's HIF systems. The Registration Statement stated in pertinent part as follows:

**Our Solution**

*50/50 Value Proposition.* We estimate our HIF lighting systems generally reduce lighting-related electricity costs by approximately 50% compared to HID fixtures, while increasing the quantity of light by approximately 50% and improving lighting quality.

*Rapid Payback Period.* In most retrofit projects where we replace HID fixtures, our customers typically realize a two to three year payback period on our HIF lighting systems without considering utility incentives or government subsidies.

*Comprehensive Energy Management Systems.* In addition to our HIF lighting systems, our energy management system includes our InteLite intelligent lighting controls and our Apollo Light Pipe, which collects and focuses daylight without consuming electricity. We believe that implementation of our complete energy management system enables our customers to realize even further reduced electricity costs while permanently reducing base and peak load electricity demand.

*Easy Installation, Implementation and Maintenance.* Our HIF fixtures are designed with a lightweight construction and modular architecture that allows for fast and easy installation, facilitates maintenance and allows for easy integration of other components of our energy management system.

*Base and Peak Load Relief for Utilities.* Our energy management systems can substantially reduce electricity demand during peak and off-peak periods, which can reduce the need for utilities to invest in additional capacity, reduce the impact of peak demand periods on the electrical grid, and better enable utilities to provide reliable electric power to their customers.

*Environmental Benefits.* We estimate that the use of our HIF fixtures has reduced indirect carbon dioxide emissions by 3.4 million tons through September 30, 2007 by permanently reducing our customers' electricity consumption.

28.    The Registration Statement described the Company's "Competitive Strengths" stating in pertinent part as follows:

**Our Competitive Strengths**

*Compelling Value Proposition.* We believe our ability to deliver improved lighting quality while reducing electricity costs differentiates our value proposition from other demand management solutions which require end users to alter the time, manner or duration of their electricity use to achieve cost savings.

*Large and Growing Customer Base.* We have installed our products in over 2,100 commercial and industrial facilities across North America. As of September 30, 2007, we have completed or are in the process of completing retrofits in over 400 facilities for our 78 Fortune 500 customers, which we believe is a significant endorsement of our value proposition.

*Systematized Sales Process.* We primarily sell directly to our end user customers using a systematized multi-step sales process that focuses on our value proposition. We have also developed relationships with numerous electrical contractors, who often have significant influence over the choice of lighting solutions that their customers adopt.

*Innovative Technology.* We have developed a portfolio of 16 United States patents primarily covering elements of our HIF lighting systems and nine patents pending primarily covering elements of our InteLite controls and our Apollo Light Pipe.

*Strong, Experienced Leadership Team.* Our senior executive management team of seven individuals has a combined 40 years of experience with our company and a combined 77 years of experience in the lighting and energy management industries.

*Efficient, Scalable Manufacturing Process.* We have made significant investments in production efficiencies, automated processes and modern production equipment to increase our production capacity, reduce our cost of revenue, better control production quality and allow us to respond timely to customer needs.

29.    The Registration Statement described the Company's "Growth Strategies" and mentioned the Company's new technologies but did not disclose that the Company was presently directing its sales efforts towards sales of the InteLite controls and Apollo Light Pipe. The Registration Statement stated in pertinent part as follows:

**Our Growth Strategies**

*Leverage Existing Customer Base.* We are expanding our customer relationships from single-site facility implementations of our HIF lighting systems to

- 8 -

comprehensive enterprise-wide roll-outs of our complete energy management systems for our existing customers.

*Target Additional Customers.* We are expanding our customer base by executing our systematized sales process, increasing our direct sales force, expanding our marketing efforts and developing relationships with electrical contractors, value-added resellers and their customers.

*Provide Load Relief to Utilities and Grid Operators.* As we increase our market penetration, we believe our systems will, in the aggregate, have a significant impact on reducing base and peak load electricity demand. We therefore intend to market our energy management systems directly to utilities and grid operators as a lower-cost, permanent alternative to capacity expansion to help them provide reliable electric power to their customers in a cost-effective and environmentally-friendly manner.

*Continue to Improve Operational Efficiencies.* We are focused on continually improving the efficiency of our operations by reducing our costs of materials, components, manufacturing and installation, as well as gaining additional leverage from our systematized multi-step sales process, in order to enhance the profitability of our business and allow us to continue to deliver our compelling value proposition.

*Develop New Sources of Revenue.* In addition to our recently introduced InteLite and Apollo Light Pipe products, we are continuing to develop new energy management products and services that can be utilized in connection with our current energy management systems.

30. The Registration Statement highlighted the Company's increasing revenues but failed to disclose that the growth rate for the Company's revenues was slowing as the Company directed its sales efforts towards sales of the InteLite controls and the Apollo Light Pipe. The Registration Statement stated in pertinent part as follows:

Our product revenue and service revenue each increased for our fiscal 2008 first half from our fiscal 2007 first half primarily as a result of increased sales of our HIF lighting systems and related services. The relative increase in our service revenue was also the result of our increased emphasis on achieving higher billing rates for our services. As of September 30, 2007, we had a backlog of firm purchase orders of approximately $11.0 million, compared to approximately $10.1 million as of March 31, 2007. We generally expect this level of firm purchase order backlog to be converted into revenue within the following quarter. Principally as a result of the continued shortening of our customer sales cycles, a comparison of backlog from period to period is not necessarily meaningful and may not be indicative of actual revenue recognized in future periods.

31.     The statements reference above in ¶¶26-30 were inaccurate statements of material fact because they failed to disclose that the Company had changed the focus of its sales efforts to more speculative and developmental products. Furthermore, Defendants' positive statements about the Company's growth and revenues created an obligation to disclose that the Company's growth rate would be slowing in order to pursue sales of more speculative and developmental products.

32.     The Registration Statement represented that the proceeds of the IPO would be used for "general corporate purposes." The Registration Statement stated in pertinent part as follows:

> The principal purposes for this offering are to generate funds for working capital and general corporate purposes, including to fund potential future acquisitions, and to create a public market for our common stock. As of the date of this prospectus, we have not entered into any purchase agreements, understandings or commitments with respect to any acquisitions.

This was an inaccurate statement of material fact because it did not disclose that the Company intended to use the proceeds to fund the sale of new and developmental products never before market tested.

33.     Under applicable SEC rules and regulations governing the preparation of the Registration Statement and Prospectus, the Registration Statement and Prospectus were required to disclose that the Company had dramatically shifted its sales focus from its core offerings to new product lines. The Registration Statement failed to contain any such disclosure. Specifically:

(a)     Pursuant to Item 11(h) of Form S-1, the Registration Statement was required to furnish the information required by Item 303 of Regulation S-K. Under Item 303(a) of Regulation S-K an issuer is required to, among other things, "describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." The Company's change in sales focus, as detailed herein, was then having, and would continue to have, an unfavorable impact

on the Company's revenues and income from continuing operations and, therefore, were required to be disclosed in the Registration Statement but was not; and

      (b)    Pursuant to Item 3 of Form S-1, the Registration Statement was required to furnish the information required by Item 503 of Regulation 503. Under Item 503(c) of Regulation S-K, an issuer is required to, among other things, provide a "discussion of the most significant factors that make the offering risky or speculative." The Company's change in sales focus to more speculative and developmental products made the Company's ability to consistently and predictably generate revenues far more risky. Accordingly, the Company's change in sales focus was a "significant factor" that made the IPO "risky or speculative" and were required to be disclosed in the Registration Statement but was not.

      34.    On February 6, 2008, Orion issued a press release announcing its financial results for its fiscal 2008 third quarter and nine months ended December 31, 2007.

      35.    Following the earnings release, Defendants held a conference call with analysts and investors to discuss the Company's earnings announcement and operations. During the conference call, Defendants admitted that the Company had redirected its selling efforts. The following exchange took place:

> Operator: And I like to remind you if would like to ask a question please Star 1 at this time. We'll now go to Daniel Beckman for ING
>
> Daniel: Hi, how are you? Two questions. First, you mentioned $250 million run ratio for operating margin target. What's the timeframe on that?
>
> Neil: If possible with our growth on a continuing basis what we've seen in the last five years, you know just extrapolate that out to see how the numbers work out.
>
> Daniel: Ok and then my second question is – basically just asking the question the first two callers asked – I don't think I really understood the answer. **My sense on your guidance is your going for a down 4th quarter and I understand that you model things on an annual basis, but I think that the market likes to view this as a growth company, a growth story and from what I can see of your prospectus you produce mostly every other quarter. So is there any specific reason why**

your revenues would be down sequentially in the March quarter? Is that just conservatism – what is that?

Neil: It's not what we conserve it's all part of a plan as we manage and drive our business every year for the last five years. And it just happened to work out that way. **In this case here, what we're going to do is deploy more resources and get more aggressive in pushing the envelope in some of our Phase 2 and Phase 3 and numerous initiatives and maybe bring those into the fold faster than probably what we were going to originally.** This is just the way we do business. So we don't look at a quarter over quarter or month over month – it's just comes out at the end. **Everybody is driven for annual goals, for top line of profitability and then if we've got some room in there then we can actually redeploy some resources to push our new initiatives our and harder than we may have done in earlier quarters.**

Daniel: Ok.

Neil: I hope that answered it.

Daniel: No I think it answered it, I just think that maybe the market will be somewhat disappointed to see that the revenues are in a decline in your first kind of full quarter and the business and you're going to, **I guess so quickly it's starting to reinvest in sources outside of current revenue.**

Neil: You know, you've got to look at it with 60% growth annually. And in our states, not only are we growing greater than the 50% clip but we're actually making money and building on an install base while we're going to bring to market technology that's going to revolutionize this business. We're not just creating technology we're creating a whole market, a whole new business model. So to me I think it's quite remarkable to actually do all those things, continue to build technology while you're growing by more than 60% and actually to bring money to the bottom line. If you look at the other focus in our states, I think you'll find it to be quite unique what we're able to accomplish here at Orion. [Emphasis added.]

36.    In response to this announcement, the price of Orion stock declined from $14.90 per share to $8.51 per share on extremely heavy trading volume. News and analysts reports indicated that the price of Orion stock had declined because the Company had disclosed that it had redirected its selling efforts towards its new products. For example, on February 7, 2008, Thomas Weisel issued an analyst report on Orion stock. The reported stated in pertinent part as follows:

> While we would have hoped for greater transparency during the IPO process about some of these strategic issues the company has underway that are impacting near

term revenue, we believe the long term fundamentals of the company are intact and the stock is extremely inexpensive at current levels.

While management handled the earnings call poorly, n our view, in terms of detailing some of the drivers for the 10%+ sequential revenue decline in the March quarter, we believe the company is on sound footing as we look ahead.

37.     As of the date of the filing of this amended complaint, the price of Orion stock is $5.94 per share.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against All Defendants

38.     Plaintiffs repeat and reallege each and every allegation contained above.

39.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

40.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

41.     Orion is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

42.     As issuer of the shares, Orion is strictly liable to Plaintiff and the Class for the misstatements and omissions.

43.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

44.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

45.    Plaintiff acquired Orion shares pursuant and/or traceable to the Registration Statement.

46.    Plaintiff and the Class have sustained damages.  The value of Orion common stock has declined substantially subsequent to and due to Defendants' violations.

47.    At the times they purchased Orion shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to February 6, 2008.  Less than one year elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Plaintiff filed its complaint.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act
### Against All Defendants

48.    Plaintiff repeats and realleges each and every allegation contained above.

49.    This Count is brought by Plaintiff pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l, on behalf of all purchasers of Orion common stock in connection with, and traceable to, the IPO.  For purposes of this Count, Plaintiff affirmatively states that it does not claim that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

50.    Defendants were sellers, offerors and/or solicitors of purchasers of the Orion common stock offered pursuant to the Prospectus.  Defendants issued, caused to be issued, and/or signed the Registration Statement in connection with the IPO.  The Registration Statement and Prospectus were used to induce investors, such as Plaintiff and the other members of the Class, to purchase Orion's common stock.

- 14 -

51.    The Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts. The Individual Defendants' actions of solicitation included participating in the preparation of the false and misleading Prospectus. Orion, acting through its employees, agents and others, solicited such purchases for its personal financial gain through the preparation and dissemination of the Prospectus and the Underwriter Defendants, acting through their employees, agents and others, solicited such purchases for their personal financial gain through the preparation and dissemination of the Prospectus.

52.    Pursuant to the Registration Statement and Prospectus, the Underwriter Defendants purchased at least 8.8 million Orion common shares at the public offering price, less an underwriting discount in the IPO.

53.    The Underwriter Defendants participated in the preparation and dissemination of the false and misleading Prospectus for their own financial benefit. But for their participation in the IPO, including their solicitation as set forth herein, the IPO could not and would not have been accomplished. Specifically, these Defendants:

(a)    made the decision to conduct the IPO at the price set forth in the offering documents. These Defendants drafted, revised and/or approved the Prospectus. The Prospectus was calculated to create interest in Orion common shares and was widely distributed by or on behalf of these Defendants for that purpose;

(b)    finalized the Prospectus and caused it to become effective; and

(c)    conceived and planned the IPO and orchestrated all activities necessary to affect the sale of these securities to the investing public by issuing securities, promoting the securities and supervising their distribution and ultimate sale to the investing public.

54. As set forth more specifically above, the Prospectus contained untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

55. Lead Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Prospectus.

56. The Defendants named in this Count were obligated to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. None of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus were accurate and complete in all material respects. Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

57. This claim was brought within one year after discovery of the untrue statements and omissions in the Prospectus and within three years after Orion common stock was sold to the Class in connection with the IPO.

58. By reason of the misconduct alleged herein, the Defendants named in this Count violated Section 12(a)(2) of the Securities Act and are liable to Lead Plaintiff and Class members who purchased or acquired Orion common stock pursuant to the Prospectus, each of whom has been damaged as a result of such violation. Accordingly, Plaintiff and/or the other members of the Class who hold shares issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the Defendants sued herein. Class members who have sold their shares seek damages to the extent permitted by law.

## COUNT III

### Violations of Section 15 of the Securities Act
### Against the Individual Defendants

59.     Plaintiff repeats and realleges each and every allegation contained above.

60.     This Count is brought pursuant to Section 15 of the Securities Act against the Individual Defendants.

61.     Each of the Individual Defendants was a control person of Orion by virtue of his or her position as a director and/or senior officer of Orion. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Orion.

62.     Each of the Individual Defendants was a culpable participant in violation of Section 11 of the Securities Act alleged in Count I above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the Class, prays for judgment as follows:

A.     declaring this action to be a action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.     awarding Plaintiff and other members of the Class damages together with interest thereon;

C.     awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

- 17 -

D.    awarding Plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury

DATED:  August 1, 2008

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.

SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

*Lead Counsel for Plaintiffs*

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

*Additional Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Samuel H. Rudman, hereby certify that on August 1, 2008, I caused a true and

correct copy of the attached:

Consolidated Amended Class Action Complaint for Violations of The Federal
Securities Laws

to be: (i) filed by hand with the Clerk of the Court; and (ii) served by first-class mail to

all counsel on the attached service list.

SAMUEL H. RUDMAN

## CERTIFICATE OF SERVICE

I, Samuel H. Rudman, hereby certify that on August 1, 2008, I caused a true and correct copy of the attached:

Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws

to be: (i) filed by hand with the Clerk of the Court; and (ii) served by first-class mail to all counsel on the attached service list.

_/s/ Samuel H. Rudman_
Samuel H. Rudman

ORION ENERGY SYSTEMS
(LEAD)

Service List - 8/1/2008          (08-0065)

Page 1 of 1

**Counsel For Defendant(s)**

Robert A. Scher
Foley & Lardner LLP
90 Park Avenue
New York, NY  10016
  212/682-7474
  212/687-2329 (Fax)

Jerome S. Hirsch
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY  10036
  212/735-3000
  212/735-2000 (Fax)

**Counsel For Plaintiff(s)**

Samuel H. Rudman
David A. Rosenfeld
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
  631/367-7100
  631/367-1173 (Fax)

Cynthia J. Billings
Sullivan, Ward, Asher & Patton, P.C.
25800 Northwestern Highway
1000 Maccabus Center
Southfield, MI  48075
  248/746-0700
  248/746-2760 (Fax)