**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                :

                 No. 08-cv-1328 (RJS)

*In re*
ORION SECURITIES LITIGATION  :  **ECF CASE**

                 **Electronically Filed**

                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x




## DEFENDANTS' MEMORANDUM OF LAW
## <u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>


          SKADDEN, ARPS, SLATE,
           MEAGHER & FLOM LLP
          Jerome S. Hirsch
          Bryan Levine
          Four Times Square
          New York, NY  10036
          (212) 735-3000


          *Attorneys for Defendants*
          Orion Energy Systems, Inc.
          Neal R. Verfuerth
          Daniel J. Waibel
          Thomas A. Quadracci
          Michael J. Potts
          Diana Propper de Callejon
          James R. Kackley
          Eckhart G. Grohmann
          Patrick J. Trotter

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

    A.    Nature of This Action ........................................................................ 1

    B.    Specific Grounds for Dismissal........................................................ 3

BACKGROUND FACTS ............................................................................................... 8

    A.    The Parties........................................................................................ 8

    B.    Orion's IPO and the Disclosures in the Prospectus.......................... 9

    C.    Orion's February 6, 2008, Earnings Call and Stock Price Decline ...... 12

    D.    The Analyst Report and the Commencement of This Litigation ......... 14

ARGUMENT ............................................................................................................ 14

I.    Plaintiff Has Failed to State a Claim for Relief Under Sections 11
and 12(a)(2) of the Securities Act ...................................................... 14

    A.    Plaintiff's Allegation that, *at the Time of the IPO*, Orion Had
Dramatically Shifted Its Sales Focus, Resulting in Slowing Sales
Growth, Is a Bare Conclusion and Is Contradicted by the Disclosures
in Documents Referred to in the Consolidated Complaint ................. 15

    B.    The Prospectus Plainly Disclosed Orion's Future Growth Strategies ........ 19

    C.    The Prospectus Adequately Described the Purposes for Which Orion
Intended to Use the Proceeds of the IPO ........................................ 22

II.    Plaintiff Has Failed to State a Claim Against the Individual Defendants for
Violation of Section 15(a) of the Securities Act ................................... 24

CONCLUSION ......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                                                                 <u>**Page(s)**</u>

*In re Acceptance Corp. Securities Litigation*, 423 F.3d 899 (8th Cir. 2005)...............................17

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006)..............................16

*Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972) ...................................................20

*ATSI Communications Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)...................4, 15–16

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ......................................................16, 22

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).....................................................2

*In re Bristol-Myers Squibb Securities Litigation,*
      312 F. Supp. 2d 549 (S.D.N.Y. 2004) .............................................................................16

*Castlerock Management Ltd. v. Ultralife Batteries, Inc.,*
      114 F. Supp. 2d 316 (D.N.J. 2000) .................................................................................17

*Charas v. Sand Technology Systems International, Inc.*, No. 90 Civ. 5638,
      1992 U.S. Dist. LEXIS 15227 (S.D.N.Y. Oct. 7, 1992).................................................19

*In re CIT Group, Inc. Securities Litigation*, 349 F. Supp. 2d 685 (S.D.N.Y. 2004) ..............17, 19

*DeMaria v. Andersen*, 153 F. Supp. 2d 300 (S.D.N.Y. 2001) ....................................................23

*In re Flag Telecom Holdings, Ltd. Securities Litigation,*
      308 F. Supp. 2d 249 (S.D.N.Y. 2004) .............................................................................16

*Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008)...........................................19

*Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999) .......................................................3

*Lin v. Interactive Brokers Group, Inc.*, No. 08 Civ 242,
      2008 U.S. Dist. LEXIS 67046 (S.D.N.Y. Aug. 22, 2008)..............................................17

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation,*
      289 F. Supp. 2d 429 (S.D.N.Y. 2003) .............................................................................24

*Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571 (S.D.N.Y. 2007)...................................15, 21–22, 23

*In re NYSE Specialists Securities Litigation*, 503 F.3d 89 (2d Cir. 2007) ...................................16

**Page(s)**

*Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2 (2d Cir. 1996) ........................................... 24

*Rapoport v. Asia Electronics Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000) ................................................................................... 16

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) .......................................................... 14–15, 24

*Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ................................................ 16

*Santa Fe Industries, Inc, v. Green*, 430 U.S. 462 (1977) ........................................................... 19

*Scibelli v. Roth*, No. 98 Civ. 7228, 2000 U.S. Dist. LEXIS 790
    (S.D.N.Y. Jan. 31, 2000) .................................................................................................... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ........................................ 4

*In re Turkcell Iletisim Hizmetler A.S. Securities Litigation*,
    202 F. Supp. 2d 8 (S.D.N.Y. 2001) ................................................................................... 19

*In re WorldCom, Inc. Securities Litigation*,
    346 F. Supp. 2d 628 (S.D.N.Y. 2004) ............................................................................... 23

**Statutes**

Private Securities Litigation Reform Act of 1995,
    Pub. L. No. 104-67,109 Stat. 737 .................................................................................... 2, 3

Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* ......................................................................... 2

Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* ......................................................... 2

15 U.S.C. § 77k(a) .................................................................................................................. 1, 14

15 U.S.C. § 77*l*(a)(2) .............................................................................................................. 1, 14

15 U.S.C. § 77o(a) .................................................................................................................. 2, 15

15 U.S.C. § 77z-1 ........................................................................................................................ 3

U.S.C. § 78u-4 ............................................................................................................................. 3

**Regulations**

Item 303(a) of Regulation S-K, 17 C.F.R. § 229.303(a) ...................................................... 18–19

Item 503(c) of Regulation S-K, 17 C.F.R. § 229.503(c) ............................................................ 24

**Page(s)**

**Rules**

Fed. R. Civ. P. 11(b) .................................................................................................... 3

Fed. R. Civ. P. 12(b)(6).......................................................................................... 15, 23

**Legislative History**

H.R. Conf. Rep. No.104-369, 104th Cong., at 31 (1995) ........................................ 2–3

iv

Defendant Orion Energy Systems, Inc., ("Orion" or the "Company"), and defendants Neal R. Verfuerth, Daniel J. Waibel, Diana Propper de Callejon, Thomas A. Quadracci, Michael J. Potts, James R. Kackley, Eckhart G. Grohmann, and Patrick J. Trotter (collectively, the "Individual Defendants," and together with Orion, the "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Amended Class Action Complaint (the "Consolidated Complaint," cited herein as "Compl.") filed by lead plaintiff Iron Workers Local No. 25 Pension Fund ("Plaintiff").[1]

## PRELIMINARY STATEMENT

### A.     Nature of This Action

On December 19, 2007, Orion, a developer and manufacturer of innovative energy management systems, issued shares of its common stock in an initial public offering (the "IPO"). The shares were offered and sold pursuant to a prospectus (the "Prospectus"), which was incorporated in a registration statement (the "Registration Statement") filed with United States Securities and Exchange Commission (the "SEC"). (Compl. ¶¶ 18, 19.) Less than two months later, Orion's stock price declined and this litigation ensued.

Plaintiff alleges that Orion's Registration Statement and Prospectus misstated, and omitted to state, allegedly material facts. Plaintiff asserts claims against all Defendants for alleged violations of Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k(a) and 77*l*(a)(2), respectively. Plaintiff also asserts a claim against the

---

[1]     Pursuant to this Court's Individual Practices, Defendants have submitted a copy of the Consolidated Complaint with this memorandum. The Consolidated Complaint is included as Exhibit A to the Declaration of Jerome S. Hirsch submitted herewith (the "Hirsch Declaration," cited herein as "Decl.").

Individual Defendants for controlling person liability under Section 15(a) of the Securities Act, 15 U.S.C. § 77o(a).

Plaintiff's claims are baseless. Indeed, this action is precisely the type of abusive strike suit that Congress repeatedly has endeavored to curtail. Within a year of enacting the Securities Act, 15 U.S.C. § 77a, *et seq.*, Congress recognized "the potential for nuisance or 'strike' suits in this type of litigation." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975). When Congress enacted the Securities Exchange Act in 1934, 15 U.S.C. § 78a, *et seq.* (the "Exchange Act"), Congress amended the Securities Act, adding to Section 11(e) thereof a provision that allows a court, in its discretion, to require an undertaking by plaintiff for payment of the costs of the suit, including reasonable attorneys' fees, and allowing a court, upon a motion by a successful defendant, to award such costs and fees whether or not the court required such undertaking. *See* 15 U.S.C. § 77k(e); *see also Blue Chip Stamps*, 421 U.S. at 739–40 (discussing amendment and Congress's concern that "even a complaint which by objective standards may have very little chance of success at trial has a settlement value out of any proportion to its success at trial so long as [the plaintiff] may prevent the suit from being resolved against him by dismissal or summary judgment").

Sixty one years later, Congress addressed the problem of abusive securities litigation in a more comprehensive manner when it enacted the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (the "PSLRA"). Congress passed the PSLRA in an effort to end "abusive practices committed in private securities litigation," including:

> (1) the routine filing of lawsuits against issuers of securities and others whenever there is a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer, and with only faint hope that the discovery process might lead eventually to some plausible cause of action; (2) the targeting of deep pocket defendants, including accountants, underwriters, and individuals who may be covered by insurance, without regard to their actual culpability; (3)

2

> the abuse of the discovery process to impose costs so burdensome that it is often
> economical for the victimized party to settle; and (4) the manipulation by class
> action lawyers of the clients whom they purportedly represent.

Joint Explanatory Statement of the Committee of Conference, Statement of Managers, H.R. Conf.

Rep. No. 104-369, 104th Cong., at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730; *see also, e.g.*,

*Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir. 1999) ("The enactment of the PSLRA

in 1995 marked a bipartisan effort to curb abuse in private securities lawsuits, particularly the

filing of strike suits.").[2]

A review of the disclosures in Orion's Prospectus and in the other documents referred to

in the Consolidated Complaint leaves no doubt that this is the sort of meritless strike suit that

Congress had in mind when it amended Section 11(e) of the Securities Act and when it later

enacted the PSLRA. These disclosures show that Plaintiff's allegations do not give rise to any

plausible inference that the allegedly omitted facts existed as of the date of the IPO, and they

refute Plaintiff's assertion that the Prospectus misstated any material facts.

**B.      Specific Grounds for Dismissal**

Orion's Prospectus disclosed that the Company's three primary products are: (1) the

Compact Modular, a line of high intensity fluorescent ("HIF") lighting systems; (2) Orion's

InteLite lighting controls, which can be programmed to turn light fixtures on and off based on

user-defined parameters; and (3) the Apollo Light Pipe, a lens-based device that collects and

focuses daylight, bringing natural light indoors without consuming electricity. (Prospectus (Decl.

---

[2]     Title I of the PSLRA, captioned "Reduction of Abusive Litigation," added to the Securities
Act provisions regarding the selection of (and compensation awarded to) lead plaintiffs, a
provision staying discovery during the pendency of a motion to dismiss, and provisions
requiring courts to impose sanctions for violations of Rule 11(b) of the Federal Rules of Civil
Procedure. *See* 15 U.S.C. § 77z-1. Title I added identical provisions to the Exchange Act and
also imposed heightened pleading requirements for fraud claims asserted under the Exchange
Act. *See* 15 U.S.C. § 78u-4.

Ex. B) at 1, 61-62.) Orion refers to these three primary products as "phases" of its complete

energy system: Phase 1 is the HIF lighting system, Phase 2 is the InteLite lighting controls, and

Phase 3 is the Apollo Light Pipe. (Compl. ¶ 25.)[3]

Less than two months after the IPO, on February 6, 2008, Orion held its first public

earnings call. (*Id.* ¶¶ 34, 35.) The purpose of the call was to review with analysts and investors

the Company's results for its fiscal 2008 third quarter and nine months ended December 31,

2007. (*Id.*) (Orion's fiscal year begins on April 1 and ends on March 31 of the following calendar

year.) Orion reported that third quarter 2008 revenues were $23.3 million and year-to-date

revenues were $58.4 million—an increase of 73% over revenues for the first nine months of

fiscal 2007. (Feb. 6, 2008, earnings call transcript (Decl. Ex. C) at 4.) Orion also reported that it

was on track to achieve its goal of at least 62% revenue growth for the fiscal year ending March

31, 2008. (*Id.*)

During the call, an analyst noted that Orion's full-year guidance implied that revenues for

the fourth quarter of fiscal 2008 would be less than third quarter 2008 revenues and inquired

about the reason. (Compl. ¶ 35.) Orion's Chief Executive Officer, Neal R. Verfuerth, explained

that Orion was going to "deploy more resources and get more aggressive in pushing the envelope

in some of our Phase Two and Phase Three and newer initiatives, and maybe bring those into the

---

[3]    In ruling on Defendants' motion to dismiss, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007); *see also ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (a court may consider statements or documents incorporated into the complaint by reference, "legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" (citation omitted)). Defendants have submitted a complete copy of the Prospectus and the other documents quoted or referred to in the Consolidated Complaint as exhibits to the Hirsch Declaration submitted herewith.

fold faster than what we thought we were going to originally." (Decl. Ex. C at 10.) Mr. Verfuerth further explained that Orion's third quarter results gave it "some room . . . [to] redeploy some resources to push some of our new initiatives out and harder than we may have done in earlier quarters." (*Id.* at 11.)[4]

Following the earnings call, Orion's stock price, which had closed at $14.90 per share on February 5, 2008, declined 43% to close at $8.51 per share on February 6, 2008. (Compl. ¶ 36.) The next day, a securities analyst issued a report on Orion. (*Id.*; Decl. Ex. D.) The analyst stated that his firm was "surprised by the magnitude of the sell off given solid long term fundamentals for the company." (Decl. Ex. D at 1.) The analyst further reported:

> Management's 62% revenue growth guidance for FY08 was at a similar level to consensus estimates going into the quarter, *but investors were hoping for a beat and raise story and sequential growth* especially following upside for the December quarter results. **After lengthy discussions with Orion management, we now believe the implied approximate $20 million in revenue for the March quarter is a base case scenario and that upside is more likely than we previously expected.**

(*Id.* (emphasis in italics added; other emphasis in original).)

Four days later, on February 11, 2008, an individual plaintiff filed the first of the three complaints against Defendants that subsequently were consolidated before this Court. By Order dated July 7, 2008, this Court consolidated the three actions, appointed Iron Workers Local No. 25 Pension Fund as Lead Plaintiff, and gave Plaintiff until August 1, 2008, to file a consolidated amended complaint. (Docket No. 36.) In the Consolidated Complaint, filed on August 1, 2008, Plaintiff alleges that the Registration Statement and Prospectus for Orion's IPO were false and

---

[4]    Although Plaintiff purports to quote statements made during the conference call in paragraph 35 of the Consolidated Complaint, there are slight (although immaterial) differences between Plaintiff's purported quotations and the statements reflected in the transcript of the call. Defendants quote herein from the actual transcript of the February 6, 2008, conference call, which is included as Exhibit C to the Hirsch Declaration.

misleading because they supposedly failed to disclose that, "*at the time of the IPO* the Company had dramatically shifted its sales focus from its core offerings to new product lines" (Compl. ¶ 22 (emphasis added)), and, as a result, Orion's sales growth was slowing. (*Id.* ¶ 30.) Plaintiff also alleges that the Registration Statement and Prospectus misrepresented that the proceeds of the IPO would be used for general corporate purposes when, according to Plaintiff, Orion "intended to use the proceeds to fund the sale of new and developmental products never before market tested." (*Id.* ¶ 32.)

Plaintiff's claims are meritless. The securities laws require a prospectus to be accurate on the date it becomes effective. Plaintiff's assertion that, *at the time of the IPO*, Orion had "dramatically" changed its business focus, resulting in slower sales growth, is a bare conclusion unsupported by any allegations of fact. Plaintiff's allegation, moreover, is contradicted by the disclosures in Orion's February 6 press release and the transcript of Orion's February 6 earnings call. These documents show that, contrary to Plaintiffs' assertions, Orion's sales were *increasing* at the time of the IPO, and that it was precisely for this reason that Orion decided, in the quarter *following* the IPO, that it had the leeway to pursue sales of its Phase 2 and Phase 3 products more aggressively. *See* Argument, Section I, A.

To the extent Plaintiff is suggesting that Orion's Prospectus misled investors to believe that, *in the future*, Orion would focus only on sales of its core Phase 1 products, that allegation is refuted by the disclosures in the Prospectus itself. The Prospectus plainly disclosed that: (1) Orion planned to expand its relationships with existing users of the Company's Compact Modular HIF lighting system by selling these customers all aspects of Orion's complete energy management system; (2) Orion intended to continue to develop new sources of revenue, in addition to Orion's recently introduced InteLite and Apollo Light Pipe products; and (3) Orion's

future success depended on its ability to continue to design and manufacture new products and services. The disclosures in the Prospectus also refute Plaintiff's insinuation that Orion essentially abandoned its focus on sales of its core Phase 1 products. Indeed, the Prospectus reveals that this suggestion makes no sense. The Prospectus plainly and repeatedly disclosed that Orion's Phase 2 and Phase 3 products are *add-ons* to Orion's core Phase 1 Compact Modular HIF lighting system. If Orion did not sell its Phase 1 products, it would have no market for its Phase 2 and Phase 3 products. *See* Argument, Section I, B.

As for Plaintiffs' claim that Orion failed to disclose that it intended to use the proceeds of the IPO to fund the sale of "new and developmental products never before market tested," that allegation also is a bare conclusion devoid of any supporting allegations of fact. Furthermore, even if Orion had used the proceeds for this purpose, the Prospectus plainly disclosed that the proceeds of the IPO would be deployed for working capital and general corporate purposes and that Orion's management would have broad discretion on how to use the IPO proceeds. The Prospectus also disclosed that Orion's future success depended, in part, on its ability to develop new products, and that Orion might make investments in new product lines to expand its current capabilities. *See* Argument, Section I, C.

For these reasons and the reasons set forth more fully herein, Plaintiff's allegations fail to state any claim against any of the Defendants for violation of Sections 11 and 12(a)(2) of the Securities Act. These claims, therefore, must be dismissed. In addition, Plaintiff's failure to state any Section 11 or 12(a)(2) claim against Orion, the alleged controlled person, mandates dismissal of Plaintiff's Section 15(a) claim for controlling person liability against the Individual Defendants. This Court, therefore, should grant Defendants' motion and dismiss this action with prejudice.

# BACKGROUND FACTS[5]

## A.    The Parties

Defendant Orion is a Wisconsin corporation that maintains its principal executive offices in Plymouth, Wisconsin. (Prospectus (Decl. Ex. B) at 3.) Orion designs, manufactures, markets, and implements energy management systems, primarily energy efficient lighting systems, controls, and related services. (Compl. ¶¶ 7, 17.) Orion's top customers by revenue in fiscal 2007 included Coca-Cola Enterprises, Inc., General Motors Co., Kraft Foods, Inc., Newell Rubbermaid Inc., OfficeMax, Inc., SYSCO Corp., and Toyota Motors Corp. (Compl. ¶ 26; Prospectus (Decl. Ex. B) at 31.)

At all relevant times, defendant Neal R. Verfuerth was Orion's Chief Executive Officer and President (Compl. ¶ 8(a)); defendant Daniel J. Waibel was Orion's Chief Financial Officer and Treasurer (*id.* ¶ 8(b)); and defendants Diana Propper de Callejon, Thomas A. Quadracci, Michael J. Potts, James R. Kackley, Eckhart G. Grohmann, and Patrick J. Trotter were directors of Orion. (*Id.* ¶¶ 8(c), (d).) Mr. Potts also was Orion's Executive Vice President at all relevant times. (Prospectus (Decl. Ex. B) at 66.) Each of the Individual Defendants signed the Registration Statement for Orion's IPO. (Compl. ¶¶ 8(a)–(d).)[6]

---

[5]    The facts set forth herein are based solely on the allegations in Plaintiff's Consolidated Complaint and on the documents referred to in the Consolidated Complaint, which the Court may consider in ruling on Defendants' motion to dismiss. *See* n.3, *supra.*

[6]    The Consolidated Complaint also names as defendants Thomas Weisel Partners, LLC, Canaccord Adams, Inc., and Pacific Growth Equities, LLC. (Compl. ¶ 10.) These entities served as co-lead underwriters for the IPO and are referred to collectively in the Consolidated Complaint as the "Underwriter Defendants." (*Id.*) Plaintiff has not served the Consolidated Complaint or any of its earlier versions on the Underwriter Defendants, and there is no indication in the docket that Plaintiff ever attempted to make such service. As a result of the failure to serve the Consolidated Complaint on the Underwriter Defendants, the Underwriter Defendants are under no obligation to respond to the Consolidated Complaint. Nevertheless, the arguments made herein concerning the insufficiency of Plaintiff's Section 11 and 12(a)(2)

*(cont'd)*

Plaintiff purchased Orion common stock in or traceable to the IPO. (Compl. ¶ 6.) Plaintiff

purports to sue on behalf of itself and a putative class of all persons, other than Defendants, who

purchased common stock of Orion pursuant to or traceable to the IPO, during the period from

December 18, 2007, through February 6, 2008, inclusive (the "Class Period"). (*Id.* ¶¶ 1, 11.)

### B.    Orion's IPO and the Disclosures in the Prospectus

On December 12, 2007, Orion filed with the SEC a Form S-1/A Registration Statement

as a first step toward completing its IPO. (*Id.* ¶ 18.) Shortly thereafter, on December 18, 2007,

the Prospectus, which forms part of the Registration Statement, became effective. (*Id.* ¶ 19.)

In the five-page "Prospectus Summary" section of the Prospectus, Orion set forth a brief

description of its business, its growth strategies, and risk factors that prospective investors should

consider before purchasing Orion's shares. (Prospectus (Decl. Ex. B) at 1–5.) These topics were

addressed in depth in the ensuing pages of the Prospectus. On page one of the Prospectus, Orion

described its business as follows:

> We design, manufacture and implement energy management systems
> consisting primarily of high-performance, energy efficient lighting systems,
> controls and related services. Our energy management systems deliver energy
> savings and efficiency gains to our commercial and industrial customers without
> compromising their quantity or quality of light. The core of our energy
> management system is our high intensity fluorescent, or HIF, lighting system that
> we estimate cuts our customers' lighting-related electricity costs by
> approximately 50%, while increasing their quantity of light by approximately
> 50% and improving lighting quality, when replacing high intensity discharge, or
> HID, fixtures. . . .
>
> *Our energy management system is comprised of: our HIF lighting system;
> our InteLite intelligent lighting controls; our Apollo Light Pipe, which collects
> and focuses daylight and consumes no electricity; and integrated energy
> management services.* We believe that the implementation of our complete energy

---

*(cont'd from previous page)*

claims apply equally to the Underwriter Defendants and would warrant dismissal of all
claims against the Underwriter Defendants if they had been served.

management system enables our customers to further reduce electricity costs, while permanently reducing base and peak load electricity demand.

(*Id.* at 1 (emphasis added).)

The Prospectus further explained that Orion's "energy management system" consists of three primary products: (1) the Compact Modular, a line of high intensity fluorescent ("HIF") lighting systems that are able to reduce electricity consumption by approximately 50% compared to standard high intensity discharge ("HID") lighting fixtures; (2) Orion's InteLite intelligent lighting controls, which include motion control and ambient light sensors that can be programmed to turn individual fixtures on and off based on the user-defined parameters; and (3) the Apollo Light Pipe, a lens-based device that collects and focuses daylight, bringing natural light indoors without consuming electricity. (*Id.* at 1, 61–62.) Orion refers to these three primary products as "phases" of its complete energy management system: Phase 1 is the HIF lighting system, Phase 2 is the InteLite lighting controls, and Phase 3 is the Apollo Light Pipe. (Compl. ¶ 25.) The Prospectus also disclosed that Orion was in the final stages of testing wireless control devices, and that Orion expected to begin selling these devices in fiscal 2008. (Decl. Ex. B at 62.)[7]

In the portion of the Prospectus Summary titled "Our Growth Strategies," Orion discussed its strategies for future growth, which included the following:

> *Leverage Existing Customer Base*. We are expanding our customer relationships from single-site facility implementations of our HIF lighting systems to comprehensive enterprise-wide roll-outs of our complete energy management systems for our existing customers. . . .

> *Develop New Sources of Revenue*. In addition to our recently introduced InteLite and Apollo Light Pipe products, we are continuing to develop new

---

[7]    In paragraph 25 of the Consolidated Complaint, Plaintiff erroneously refers to the wireless controls as the InteLite lighting controls. (Compl. ¶ 25.)

energy management products and services that can be utilized in connection with our current energy management systems.

(*Id.* at 3.) Orion discussed its growth strategies in more detail on pages 61 and 62 of the Prospectus. (*Id.* at 61–62.)

The Prospectus also contained an extensive "Risk Factors" section. (*Id.* at 9–21.) Among other things, Orion disclosed in the "Risk Factors" section of the Prospectus:

> **We depend on our ability to develop new products and services.**
>
> The market for our products and services is characterized by rapid market and technological changes, uncertain product life cycles, changes in customer demands and evolving government, industry and utility standards and regulations. As a result, *our future success will depend, in part, on our ability to continue to design and manufacture new products and services.*

(*Id.* at 12 (emphasis added).) The "Risk Factors" section also disclosed:

> **We may pursue acquisitions and investments in new product lines, businesses or technologies that involve numerous risks, which could disrupt our business or adversely affect our financial condition and results of operations.**
>
> In the future, we may make acquisitions of, or investments in, new product lines, businesses or technologies to expand our current capabilities. We may use a portion of the net proceeds from the sale of our common stock in this offering to fund such future acquisitions.

(*Id.*) In addition, the "Risk Factors" section warned:

> **We expect our quarterly revenue and operating results to fluctuate. If we fail to meet the expectations of market analysts and investors, the market price of our common stock could decline substantially, and we could become subject to securities litigation.**
>
> Our quarterly revenue and operating results have fluctuated in the past and will likely vary from quarter to quarter in the future. You should not rely on the results of one quarter as an indication of our future performance. Our revenue and operating results may fall below the expectations of market analysts or investors in some future quarter or quarters. Our failure to meet these expectations could cause the market price of our stock to decline substantially. If the price of our common stock is volatile or falls significantly below our initial public offering price, we may be the target of securities litigation.

(*Id.* at 16.) And the "Risk Factors" section also disclosed the following:

> ***Our management will have broad discretion in allocating the net proceeds of this offering.***
>
> We expect to use the net proceeds from this offering for working capital and general corporate purposes, including to fund potential future acquisitions. Consequently, our management will have broad discretion in allocating the net proceeds of this offering.

(*Id.* at 20.) This disclosure was repeated in the "Use of Proceeds" section on page 24 of the Prospectus. (*Id.* at 24.)

In the IPO, Orion sold 8,846,154 shares of its common stock at $13 per share. (Compl. ¶ 19.)

### C.    Orion's February 6, 2008, Earnings Call and Stock Price Decline

On February 6, 2008, Orion held its first public earnings conference call to review with analysts and investors the Company's results for the third quarter of its 2008 fiscal year. (Compl. ¶¶ 34, 35.) Orion's Chief Financial Officer Daniel J. Waibel reported that Orion's total revenues were $23.3 million for the third quarter of fiscal year 2008, compared to total revenues of $13.6 million for the third quarter of fiscal year 2007. (Decl. Ex. C at 4.) Year-to-date revenues for the nine months ended December 31, 2007, were $58.4 million compared to $33.9 million for the comparable period of fiscal year 2007—a year-over-year increase of 73%. (*Id.*) Mr. Waibel reported that Orion's strong performance in the third quarter "leaves us on track to achieve our goal of at least 62% revenue growth for the fiscal year ended March 31, 2008." (*Id.*) Mr. Waibel also reviewed Orion's growth, and noted that "[o]ur ongoing strategy is to build out our installed base through delivery of Phase One with significant revenue growth while increasing our profitability . . . . This affords us the opportunity to more aggressively pursue deployment of our Phase Two and Phase Three technologies in a cost-effective manner." (*Id.*)

During the call, a securities analyst inquired about Orion's guidance of 62% sales growth for fiscal 2008. The analyst noted that this full-year guidance implied that revenues for the fourth quarter of fiscal 2008 would be $19.7 million—less than the $23.3 million of revenues generated in the fiscal 2008 third quarter. (*Id.* at 7.) Following up on this observation, another securities analyst asked:

> My sense of your guidance is you're calling for a down fourth quarter, and I understand that you model things on an annual basis, but I think that the market likely views this as a growth company, a growth story and from what I can see from your Prospectus, you've grown sequentially every other quarter. So is there any specific reason why revenues will be down sequentially in the March quarter or is that just conservatism, what is that?

(*Id.* at 10.) In response to this question, Orion Chief Executive Officer Neal R. Verfuerth explained:

> It's not really conservative, it's all really part of a plan as we manage and drive our business every year for the last five years, and it just happened to work out that way. *In this case here, what we're going to do is deploy more resources and get more aggressive in pushing the envelope on some of our Phase Two and Phase Three and newer initiatives, and maybe bring those into the fold faster than what we thought we were going to originally, and this is just the way we do business.* So we don't look at it quarter-over-quarter, or month over month. It just comes down to the end, everybody is driven for annual goals for top line of profitability. *And then if we've got some room in there, then we can redeploy some resources to push some of our new initiatives out and harder than we may have done in earlier quarters.*

(*Id.* at 10–11(emphasis added).)

Following the earnings call, the price of Orion's common stock, which had closed at $14.90 per share on February 5, 2008, declined and closed at $8.51 per share on February 6, 2008. (Compl. ¶ 36.)

D.      **The Analyst Report and the Commencement of This Litigation**

On February 7, 2008, the day after the earnings call, a securities analyst issued a report on Orion. The analyst commented that the stock price decline likely was due to investor overreaction, and stated that that the "long term fundamentals" of the Company remained intact. (Compl. ¶ 36; Decl. Ex. D at 1.) The analyst noted that "[m]anagement's 62% revenue growth guidance for FY08 was at a similar level to consensus estimates going into the quarter, *but investors were hoping for a beat and raise story and sequential growth especially following upside for the December quarter results*." (Decl. Ex. D at 1 (emphasis added).) The analyst added: **"After lengthy discussions with Orion management, we now believe the implied approximate $20 million in revenue for the March quarter is a base case scenario and that upside is more likely than we previously expected."** (*Id.* (emphasis in original).) Four days later, the initial complaint in this case was filed.

**ARGUMENT**

I.      **Plaintiff Has Failed to State a Claim for Relief Under
        Sections 11 and 12(a)(2) of the Securities Act.**

Section 11 of the Securities Act creates a private right of action in favor of any person who acquires a security if the registration statement, *on the date it became effective*, "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein not misleading." 15 U.S.C. § 77k(a) (emphasis added). Section 12(a)(2) of the Securities Act imposes liability on any person who offers or sells a security by means of "a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77*l*(a)(2); *see Rombach v. Chang*, 355 F.3d 164, 168 n.2 & n.3 (2d Cir. 2004)

14

(discussing legal standard under Sections 11 and 12(a)(2)); *see also Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007) (same).

The Consolidated Complaint contains two primary allegations. The first is that Orion failed to disclose in the Registration Statement and Prospectus that "*at the time of the IPO* the Company had dramatically shifted its sales focus from its core offerings to new product lines." (Compl. ¶ 22 (emphasis added).) Specifically, Plaintiff alleges that the Registration Statement and Prospectus "described the Company's 'Growth Strategies'" and mentioned the Company's new technologies but did not disclose that the Company *was presently* directing its sales efforts towards sales of the InteLite controls and Apollo Light Pipe." (*Id.* ¶ 29 (emphasis added).) Plaintiff also alleges that the Registration Statement and Prospectus "highlighted the Company's increasing revenues but failed to disclose that the growth rate for the Company's revenues *was slowing* as the Company directed its sales efforts towards sales of the InteLite controls and the Apollo Light Pipe." (*Id.* ¶ 30 (emphasis added).)

The second allegation is that Orion's Registration Statement and Prospectus misrepresented that the proceeds of the IPO would be used for "general corporate purposes" when Orion allegedly "intended to use the proceeds to fund the sale of new and developmental products never before market tested." (*Id.* ¶ 32.) Neither of these allegations comes close to stating a claim under Section 11 or 12(a)(2).

> **A.    Plaintiff's Allegation that, *at the Time of the IPO*, Orion Had Dramatically Shifted Its Sales Focus, Resulting in Slowing Sales Growth, Is a Bare Conclusion and Is Contradicted by the Disclosures in Documents Referred to in the Consolidated Complaint.**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns Inc.*

*v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). To meet this standard, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl.*, 127 S. Ct. at 1974)). A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 127 S. Ct. at 1965.

In ruling on Defendants' motion to dismiss, therefore, the Court "need not accord '[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness.'" *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted); *see also, e.g.*, *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'" (citation omitted)); *ATSI Commc'ns*, 493 F.3d at 99 ("Allegations that are conclusory or unsupported by factual assertions are insufficient."). The Court, furthermore, "need not accept as true an allegation that is contradicted by documents on which the complaint relies." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004); *see also, e.g.*, *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("If these documents contradict the allegations of the amended complaint, the documents control.").

Where, as here, a plaintiff claims that the defendant failed to disclose material information in a registration statement or prospectus, "the plaintiff must plead facts demonstrating the defendant possessed the omitted information *when the registration statement became effective* and that the defendant had a duty to disclose that information." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 255 (S.D.N.Y. 2004); *see also*

16

*Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*, 114 F. Supp. 2d 316, 323 (D.N.J. 2000) ("To state a claim under either Section 11 or Section 12, Plaintiffs must, at a minimum, plead facts to demonstrate that allegedly omitted facts both existed, and were known or knowable, at the time of the offering."); *accord Lin v. Interactive Brokers Group, Inc.*, No. 08 Civ 242, 2008 U.S. Dist. LEXIS 67046, at *19 (S.D.N.Y. Aug. 22, 2008) (citing *Castlerock* and also noting that "[c]laims under Sections 11 and 12 are usually evaluated in tandem, because if a plaintiff fails to plead a cognizable Section 11 claim, he or she will be unable to plead one under Section 12(a)(2)").

Simply because facts are disclosed at a later date does not mean they existed at the time of the offering. *See, e.g., In re CIT Group, Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 690 (S.D.N.Y. 2004) (allegation that defendants knew loan loss reserves were inadequate at time of IPO because they were increased three weeks later insufficient to state a claim under Section 11); *Scibelli v. Roth*, No. 98 Civ. 7228, 2000 U.S. Dist. LEXIS 790 at *10 (S.D.N.Y. Jan. 31, 2000) (refusing to infer that defendants knew of downward revenue trend at time prospectus became effective merely because defendants disclosed trend eight weeks later); *see also In re Acceptance Corp. Sec. Litig.*, 423 F.3d 899, 903 (8th Cir. 2005) (citing *Scibelli*).

Here, Plaintiff's allegation that Orion's sales growth rate was slowing *at the time of the IPO* because Orion had "dramatically" shifted its focus from sales of its core Phase 1 products to sales of its Phase 2 and 3 products is a bare conclusion that is unsupported by any allegations of fact. This wholly conclusory averment, moreover, is *contradicted* by disclosures in documents referred to in the Consolidated Complaint. These documents show that Orion's sales growth rate was *increasing* at the time of the IPO. Specifically, the transcript of Orion's February 6, 2008, third quarter earnings call, from which Plaintiff quotes in the Consolidated Complaint (Compl. ¶ 35), shows that, for the first nine months of fiscal 2008, ended December 31, 2007, Orion's sales

17

revenues had increased *73%* over revenues for the comparable period of fiscal 2007. (Feb. 6, 2008, earnings call transcript (Decl. Ex. C) at 4.) Plaintiff does not even acknowledge this disclosure in the Consolidated Complaint—let alone allege that it was inaccurate.[8]

The earnings call transcript also reflects that Orion's 73% revenue growth for the first nine months of fiscal 2008 *exceeded* Orion's full-year 2008 revenue target of 62% growth. (Feb. 6, 2008, earnings call transcript (Decl. Ex. C) at 4.) Precisely because Orion's year-to-date sales growth for the first nine months of fiscal 2008 was higher than its full-year 2008 target, Orion's management decided that Orion had the leeway—*in the fourth quarter of fiscal 2008, following the IPO*—to focus more effort on sales of Orion's Phase 2 and Phase 3 products. As Orion Chief Executive Officer Neal R. Verfuerth explained, "what we're *going to do* is deploy more resources and get more aggressive in pushing the envelope on some of our Phase Two and Phase Three and newer initiatives, and *maybe bring those into the fold faster than what we thought we were going to originally*, and this is just the way we do business." (Decl. Ex. C at 10–11 (emphasis added).) Mr. Verfuerth spoke in the future tense about what Orion *intended* to do in light of its results through the third quarter of fiscal 2008. Mr. Verfuerth's statements during the earnings call do not support, and indeed contradict, Plaintiff's unsupported assertion that Orion had "dramatically" changed its sales focus *at the time of the IPO*.[9]

---

[8]  Orion reported its third quarter results in a press release dated February 6, 2008. (Compl. ¶ 34.) A copy of Orion's press release, which Orion filed with the SEC as an exhibit to a Form 8-K Current Report, is included as Exhibit E to the Hirsch Declaration. Consistent with the disclosures during the conference call, the press release reported that Orion's revenues for the nine months ended December 31, 2007, had increased 73% over revenues for the comparable period of fiscal 2007. Orion also reported in the press release that its operating income had increased 298% on a year-over-year basis. Again, Plaintiff does not allege that anything in Orion's February 6, 2008, press release was inaccurate.

[9]  For these same reasons, Plaintiff's assertion that Orion's Registration Statement and Prospectus failed to contain disclosures required by Item 303(a) of Regulation S-K, 17 C.F.R.

*(cont'd)*

**B.    The Prospectus Plainly Disclosed Orion's
Future Growth Strategies.**

Orion's decision in the fourth quarter of fiscal 2008 to pursue sales of its Phase 2 and Phase 3 products more aggressively—even though this would lead to a projected sales growth rate of *only 62%* for the full year—may have disappointed investors who, in the words of a securities analyst, "were hoping for a beat and raise story and sequential growth especially following upside for the December quarter results." (Decl. Ex. D at 1.) But investors' possible disappointment with management's strategic decision to focus on Orion's long-term growth rather than short-term results does not state a claim for violation of the federal securities laws. The securities laws do not provide a remedy for shareholders who disagree with a company's management about how best to manage the company. *See Santa Fe Indus., Inc, v. Green*, 430 U.S. 462, 479 (1977) (stating that "internal corporate mismanagement" is not actionable under the securities laws); *see also, e.g., CIT*, 349 F. Supp. 2d at 689–90 (dismissing Section 11 claim where plaintiffs merely alleged that defendants were "incorrect or unskillful" in determining business strategy); *Charas v. Sand Tech. Sys. Int'l, Inc.*, No. 90 Civ. 5638, 1992 U.S. Dist. LEXIS 15227, at *20 (S.D.N.Y. Oct. 7. 1992) (allegations of mismanagement failed to state a claim under Section 11). Rather than regulating corporate management, the "'fundamental purpose'" of the federal securities acts is "'to substitute a philosophy of full disclosure for the

_____

*(cont'd from previous page)*

§ 229.303(a), is insufficient to state any claim under Sections 11 or 12(a)(2). Item 303(a) requires the registrant to disclose "known trends" that are reasonably expected to have a material effect on its business. A plaintiff, therefore, must "plead facts indicating that the alleged known trends existed at the time of the purported misleading statements or omissions." *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 611 (S.D.N.Y. 2008); *see also, e.g.*, *In re Turkcell Iletisim Hizmetler A.S. Sec. Litig.*, 202 F. Supp. 2d 8, 13 (S.D.N.Y. 2001) ("The complaint fails to allege that there [were] 'trends' or that they were 'known' as of the date the Prospectus became effective.").

philosophy of *caveat emptor.*'" *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 151 (1972) (citation omitted).

As demonstrated above, Orion's Prospectus plainly disclosed that Orion's growth strategies included: (1) plans to sell the other components of Orion's complete energy management system to existing users of Orion's Phase 1 HIF lighting system; and (2) plans to develop new energy management products and services, in addition to Orion's recently introduced InteLite and Apollo Light Pipe products, that could be implemented in connection with Orion's energy management system. (Decl. Ex. B at 3, 60–61.) The Prospectus also disclosed that Orion's future success depended, in part, on its ability to continue to design and manufacture new products and services. (*Id.* at 12.)

The disclosures in the Prospectus, furthermore, refute Plaintiff's characterization of Orion's decision in the fourth quarter of fiscal 2008 to pursue sales of its Phase 2 and Phase 3 products more aggressively as a "dramatic" shift in Orion's sales focus. Plaintiff insinuates that Orion essentially abandoned sales of its core Compact Modular HIF lighting system and decided instead to focus on selling "more speculative technologies and developmental products," such as Orion's InteLite lighting controls and Apollo Light Pipe products. (Compl. ¶¶ 22, 31.) However, as the Prospectus plainly disclosed, the InteLite lighting controls and Apollo Light Pipe, as well as other products that were in development at the time of the IPO, such as Orion's wireless controls, are not stand-alone products, but rather are *add-ons* to Orion's core product—the Compact Modular HIF lighting system. (Decl. Ex. B at 61–62.)

The Prospectus could not be more clear on this point. In describing its "Products and Services," Orion explained:

> We provide a variety of products and services that *together comprise* our energy management system. The core of our energy management system is our

20

> HIF lighting system, which we primarily sell under the Compact Modular brand name. *We offer our customers the option to build on our core HIF lighting system by adding our InteLite controls and Apollo Light Pipe.* Together with these products, we offer our customers a variety of integrated energy management services such as system design, project management and installation. *We refer to the combination of these products and services as our energy management system.*

(*Id.* at 61 (emphasis added).) And regarding its plans to develop new sources of revenue, Orion disclosed:

> We recently introduced our InteLite and Apollo Light Pipe products *to complement our core HIF lighting systems.* We are continuing to develop new energy management products and services that can be utilized *in connection with our current products,* including intelligent HVAC integration controls, direct solar solutions, comprehensive lighting management software and controls and additional consulting services.

(*Id.* (emphasis added).)

Thus, contrary to Plaintiff's allegations, Mr. Verfuerth's statements during the February 6 earnings call that Orion intended to pursue sales of its Phase 2 InteLite control system and Phase 3 Apollo Light Pipe more aggressively did not signal any "dramatic" shift in Orion's sales focus or reveal any disclosure defects in Orion's Prospectus. (Compl. ¶¶ 33, 35.) Instead, Mr. Verfuerth's comments indicated that Orion intended to pursue the "Growth Strategies" disclosed in its Prospectus.

Where, as here, the alleged misstatements and omissions are in clear conflict with the plain language of the prospectus, "the court bears no obligation to accept as true the allegations of the complaint." *Miller,* 473 F. Supp. 2d at 579 (citing *Barnum v. Millbrook Care Ltd. P'ship,* 850 F. Supp. 1227, 1232-33 (S.D.N.Y.1994), *aff'd,* 43 F.3d 1458 (2d Cir.1994)). "If such a clear conflict between the language of the prospectus and the alleged misstatements or omissions

exists, dismissal is appropriate because no set of facts could prove the plaintiff's claims." *Id.* (citing *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 9 (2d Cir. 1998)).[10]

### C.    The Prospectus Adequately Described the Purposes for Which Orion Intended to Use the Proceeds of the IPO.

Like Plaintiff's other allegations, Plaintiff's assertion that Orion failed to disclose that it intended to use the proceeds of the IPO to "fund the sale of new and developmental products never before tested" is a bare conclusion devoid of any supporting allegations of fact. The Consolidated Complaint contains no concrete averments whatsoever to suggest that Orion used the IPO proceeds for this purpose. Plaintiff, furthermore, does not identify which "new and developmental products" Orion supposedly used the IPO proceeds to fund. If by this allegation Plaintiff is referring to the InteLite lighting controls and Apollo Light Pipe, Plaintiff's suggestion that these products were "never before tested" also is a bare conclusion and is at odds with the disclosures in the Prospectus. The Prospectus disclosed that the InteLite lighting controls and the Apollo Light Pipe were "recently introduced" products that Orion *presently was selling* to existing users of its Compact Modular HIF lighting system. (Decl. Ex. B at 3.)

The Prospectus, moreover, adequately described the uses to which Orion intended to put the proceeds of the IPO. The "Use of Proceeds" section of the Prospectus disclosed:

> The principal purposes for the offering are to generate funds for working capital and general corporate purposes, including to fund potential future acquisitions, and to create a public market for our common stock. . . .

---

[10]    Furthermore, in light of the fact that Orion's Phase 2 and Phase 3 products are add-ons to its core Phase 1 product, Plaintiff's allegation that Orion decided to "dramatically" shift its sales focus away from its core Phase 1 products to its Phase 2 and 3 add-on products is implausible on its face. If Orion did not continue to sell its core Phase 1 products, its future sales would be limited to sales of add-on products to existing customers. Plaintiff's allegations thus fail to meet *Bell Atlantic*'s pleading requirement that the alleged facts must "state a claim to relief that is plausible on its face." *Bell Atl.*, 127 S. Ct. at 1974.

> We will have broad discretion in the way that we use the net proceeds of this offering. . . . See "Risk Factors—Risks Related to Our Business—Our management team will have broad discretion in allocating the net proceeds of this offering."

(*Id.* at 24.)

It is both a function of working capital and a general corporate purpose to fund the development, marketing, and sale of items that constitute a company's disclosed product line. *See DeMaria v. Andersen*, 153 F. Supp. 2d 300, 313 (S.D.N.Y. 2001) (dismissing allegation that prospectus was false and misleading regarding use of proceeds where the filing disclosed that proceeds would be used "'primarily' as working capital and that [the issuer] had 'broad discretion'" regarding the matter (quotation omitted)), *aff'd*, 318 F.3d 170 (2d Cir. 2003); *see also, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 697 (S.D.N.Y. 2004) (holding that disclosure that proceeds would be used for "general corporate purposes" was broad enough to encompass use of proceeds to fund negative cash flow).

Furthermore, when comparing the information disclosed in a prospectus to the allegations made, the prospectus "must be read as a whole, not selectively or in a piecemeal fashion*." Miller*, 473 F. Supp. 2d at 579 (citing *Olkey*, 98 F.3d at 5 (affirming dismissal of claims brought under sections 11, 12(a)(2), and 15 of the Securities Act of 1933 because, *inter alia*, documents at issue disclosed adequately the necessary material information)). Here, the "Risk Factors" section of Orion's Prospectus, disclosed that Orion's future success would depend, in part, on its ability to develop new products and services. (Decl. Ex. B at 12.) The "Risk Factors" section also disclosed that Orion might make investments in new product lines, businesses, or technologies to expand its existing capabilities. (*Id.*) These disclosures were more than adequate to inform investors that Orion might use a portion of the IPO proceeds to fund the development of new products. Thus, dismissal under Rule 12(b)(6) is appropriate because Plaintiff could prove no set

23

of facts consistent with its allegations. *See Olkey*, 98 F.3d at 9 (citing *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1961)).[11]

**II.    Plaintiff Has Failed to State a Claim Against the Individual
        Defendants for Violation of Section 15(a) of the Securities Act.**

In Count III of the Consolidated Complaint, Plaintiff alleges a "control person" claim under Section 15 of the Securities Act, 15 U.S.C. § 77*o*, against the Individual Defendants in connection with the alleged direct violations of Section 11 and Section 12(a)(2) of the Securities Act by Orion, the alleged controlled person. (Compl. ¶¶ 59-62.) Because plaintiff has failed to allege a primary violation of the Securities Act by Orion, this claim must be dismissed. *See, e.g., Rombach*, 355 F.3d at 177-78; *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 437 (S.D.N.Y. 2003).

---

[11]    Plaintiff's bare assertion that Orion's Registration Statement and Prospectus failed to comply with Item 503(c) of Regulation S-K, 17 C.F.R. § 229.503(c), is refuted by the extensive and comprehensive discussion of pertinent "Risk Factors" in the Prospectus. (App. Ex. B at 9–21.)

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and

dismiss this action with prejudice.

Respectfully submitted,

Dated: New York, New York
        September 15, 2008

                   /s/ Jerome S. Hirsch

Of Counsel:
Matthew R. Kipp
Donna L. McDevitt
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

                   Jerome R. Hirsch (jerome.hirsch@skadden.com)
                   Bryan Levine (bryan.levine@skadden.com)
                   SKADDEN, ARPS, SLATE,
                     MEAGHER & FLOM LLP
                   Four Times Square
                   New York, New York 10036
                   (212) 735-3000

                   *Attorneys for Defendants*
                   Orion Energy Systems, Inc.
                   Neal R. Verfuerth
                   Daniel J. Waibel
                   Thomas A. Quadracci
                   Michael J. Potts
                   Diana Propper de Callejon
                   James R. Kackley
                   Eckhart G. Grohmann
                   Patrick J. Trotter